**IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA
MACON DIVISION**

| | |
|---|---|
| KREO MONTGOMERY, | |
| Plaintiff, | Civil Action No.: |
| v. | |
| AMAZON.COM SERVICES LLC, | 5:20-cv-00463 |
| Defendant. | **JURY TRIAL DEMANDED** |

## <u>COMPLAINT</u>

COMES NOW, Plaintiff Kreo Montgomery, and brings this action pursuant to the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, *et seq.*, as amended, and the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* Plaintiff alleges that Defendant Amazon.com Services LLC subjected Plaintiff to discrimination based on a disability, including its failure to provide her a reasonable accommodation, subjected Plaintiff to retaliation after she engaged in protected activities, and failed to properly compensate Plaintiff, respectfully shows the Court as follows:

### JURISDICTION AND VENUE

#### 1.

This Court has original jurisdiction over the subject matter of this civil action pursuant to 28 U.S.C. § 1331.  Moreover, this Court has jurisdiction over this matter as Plaintiff has exhausted her administrative remedies before the Equal Employment Opportunity Commission, as alleged herein.

2.

Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because Plaintiff was employed, and the events underlying this action, occurred in Macon, Bibb County, Georgia, which is located within this judicial district.

**PARTIES**

3.

Plaintiff Kreo Montgomery (hereinafter, "Plaintiff" or "Montgomery") is a citizen of the United States and a resident of Georgia.  At all times relevant to this suit, Ms. Montgomery was employed with Defendant Amazon.com Services LLC.

4.

At all relevant times, Ms. Montgomery was considered a covered, non-exempt employee under the Americans with Disabilities Act and the Fair Labor Standards Act.

5.

Defendant Amazon.com Services LLC (hereinafter, "Defendant") is a foreign limited liability company, organized under the laws of the State of Delaware.

6.

Defendant's principal office address is 410 Terry Avenue North, Seattle, Washington 98109, and Defendant may be served with process through its registered agent, Corporation Service Company, at 40 Technology Parkway South, Suite 300, Norcross, Gwinnett County, Georgia 30092.

7.

Defendant is a private employer engaged in interstate commerce, with an annual revenue in excess of $500,000.00. Defendant has more than fifteen employees who have worked for at least twenty calendar weeks in 2020 and preceding years.

8.

Defendant is a covered entity and employer within the meaning of the Americans with Disabilities Act and a covered enterprise within the meaning of the Fair Labor Standards Act.

## STATEMENT OF FACTS

9.

Plaintiff hereby pleads and incorporates by reference all of the allegations contained in Paragraphs 1 through 8, as if the same were set forth herein.

10.

Ms. Montgomery began her employment with Defendant in October 2019, working in the Amazon Fulfillment Center in Macon-Bibb County.

11.

Ms. Montgomery's primary duties were to pick items from different locations around the warehouse and prepare them for shipping.

12.

Ms. Montgomery was a full-time employee and her regular hourly wage was approximately $16.00.

13.

Often, Defendant's employees are required to continue working for short periods of time beyond their scheduled shifts in order to complete their duties on a given shift.

14.

For example, there were a number of occasions that Ms. Montgomery's shift was scheduled to end at 5:00 am, but she had not completed her tasks for that day and did not leave and clock out until approximately 5:30 am.

15.

When this occurred, Ms. Montgomery and her coworkers found that their time records were later altered by Defendant. Ms. Montgomery and her coworkers were not compensated for time worked beyond the scheduled shifts.

16.

Defendant's alteration of time records caused Ms. Montgomery and her coworkers not to receive compensation at an overtime rate of pay for hours worked in excess of 40 in said work weeks when the time was altered.

17.

Moreover, as a result of Defendant's alteration of time records, Ms. Montgomery and her coworkers did not receive any compensation for such hours that were taken away. Accordingly, Ms. Montgomery and her coworkers were not paid at least minimum wage for said altered hours

18.

On or about January 16, 2020, Ms. Montgomery was performing her duties and was picking items from a shelf. She felt a pop in her back and it became completely numb. On a break shortly thereafter, Ms. Montgomery began to feel pain and have difficulty walking. Ms. Montgomery returned to work after the break.

19.

Ms. Montgomery was telling a coworker about the pain she was experiencing and this conversation was overheard by one of Ms. Montgomery's direct supervisors. The supervisor instructed her to go to "AmCare," Defendant's on-site medical clinic.

20.

By the time that she arrived at the clinic, the pain was causing Ms. Montgomery to move slowly and she was hunched-over and unable to stand up straight.

21.

The AmCare staff applied a topical pain reliever to the affected areas, gave Ms. Montgomery ice, and had her lie down with a knee pillow. Ultimately, AmCare staff sent Ms. Montgomery back to work and she finished the rest of her shift.

22.

Defendant created an internal report of the injury but failed to advise Ms. Montgomery her worker's compensation rights.

23.

As a result of this injury, a medical professional later diagnosed Ms. Montgomery's medical conditions as a herniated disc and arthritis in her lower back.

24.

A herniated disc is a back impairment and musculoskeletal disorder that is considered a serious medical condition. The condition causes immense, chronic pain and it substantially limits major life activities such as walking, standing, and lifting items.

25.

Arthritis is an inflammatory disease in the joints and connective tissues that is a serious medical condition.  Arthritis substantially limits major life activities such as lifting, reaching, pushing, and pulling.

26.

In the days after her January 16th injury, Ms. Montgomery continued to experience pain. Ms. Montgomery informed her supervisors, but she was simply told to go to the AmCare clinic.

27.

Over the next several days, Ms. Montgomery remained in a hunched over position that became more pronounced each day and it was apparent to others that she was in pain.

28.

One day, the pain had become so immense that Ms. Montgomery was in tears.  A supervisor observed this, told Ms. Montgomery that she was a "safety hazard," and he instructed her to go home.  Ms. Montgomery left her workstation, and it took her approximately 25 minutes for her to walk to the front of the building because of her pain.

29.

After she left, Ms. Montgomery went to the emergency room where she was treated for back spasms.  Ms. Montgomery returned to work the next day.

30.

The medical professionals treating Ms. Montgomery cleared her to return to work and provided her with a list of restrictions for her condition.  Ms. Montgomery then took the list of restrictions to human resources when she returned.

31.

When human resources reviewed the restrictions, the representative told Ms. Montgomery that Defendant did not have any jobs available that Ms. Montgomery could perform.

32.

The human resources representative also said that there were no accommodations available for Ms. Montgomery's medical condition.

33.

Ms. Montgomery was further advised by human resources that her only option would be to go onto medical leave.

34.

Ms. Montgomery begged human resources and her supervisor to accommodate her condition or allow her to do some other job.  In response, she was told, "if you can't sweep, you will have to go home."  Accordingly, Ms. Montgomery was sent home.

35.

Defendant uses a "point" system, in which employees are given a certain number of points when they are absent, regardless of the reason.  Defendant's employees are subject to termination once they receive a certain number of points.

36.

Ms. Montgomery soon learned that she received points for all of her time out of work, including the day that she had to go to the emergency room and the time that she was forced on leave after her accommodations were denied.

37.

At or around the same time that Ms. Montgomery initiated this process, Defendant terminated Ms. Montgomery's employment for incurring too many points for absences and because Defendant claimed that Ms. Montgomery's medical condition could not be accommodated.

38.

Ms. Montgomery felt compelled to initiate the worker's compensation process, *pro se*, the day after the effective date of her termination.  She felt this was necessary because she had sustained an injury on the job, Defendant refused to offer her another position or change in her duties after the injury, Defendant forced her onto medical leave that she did not request, and then fired her for missing too many days.

39.

If Ms. Montgomery had been provided with an accommodation, that she had requested at the suggestion of her physician, she would have been able to perform the essential functions of her job.

40.

Initially, Ms. Montgomery received indemnity benefits through worker's compensation because Defendant had reported that it could not accommodate Ms. Montgomery, and therefore, she was considered unable to work.

41.

Ms. Montgomery initially had difficulty contacting the Georgia Department of Labor to submit a claim for unemployment benefits.  She was finally able to file her claim in May 2020.

42.

After Defendant received notice of Ms. Montgomery's Charge of Discrimination that she filed with the Equal Employment Opportunity Commission, Defendant reported to a worker's compensation claims examiner either that Ms. Montgomery had indeed been able to work with an accommodation or that she had been terminated for a reason unrelated to her medical condition. As a result, Ms. Montgomery stopped receiving indemnity benefits under worker's compensation.

43.

Similarly, in September of October 2020, after she had filed a Charge of Discrimination with the EEOC, Defendant reported to the Georgia Department of Labor that Ms. Montgomery had been able to work for Defendant at the time of her termination.

44.

Since her termination, Defendant neither asked Ms. Montgomery to return to work, nor offered her any accommodation for her medical condition.

Procedural/Administrative Background

45.

Ms. Montgomery submitted her Charge of Discrimination to the Equal Employment Opportunity Commission (hereinafter, "EEOC") and it was assigned Charge Number 410-2020-07571.

46.

The EEOC issued a Dismissal and Notice of Rights dated September 10, 2020. While said Dismissal indicates that it was mailed to Ms. Montgomery, she has not received any copy by mail.

47.

Previously, on March 17, 2020, the EEOC closed its Atlanta District Office, as well as all other physical locations, and implemented an agency-wide expanded telework policy as a result of the global COVID-19 pandemic.

48.

Ms. Montgomery has exhausted her administrative remedies and she is filing the instant action within ninety days of the EEOC's issuance of a Dismissal and Notice of Rights.

**COUNT I:**
**FAILURE TO PROVIDE A REASONABLE ACCOMMODATION**
**IN VIOLATION OF AMERICANS WITH DISABILITIES ACT**

49.

Plaintiff hereby pleads and incorporates by reference all of the allegations contained in Paragraphs 1 through 48, as if the same were set forth herein.

50.

The Americans with Disabilities Act prohibits covered entities from "discriminating against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."  42 U.S.C. § 12112(a).

51.

Discrimination based on disability includes an employer's failure to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." 42 U.S.C. § 12112(b)(5)(A).

52.

As alleged herein, Defendant and Plaintiff are a covered, non-exempt employer and employee under the Americans with Disabilities Act, respectively.  *See* 42 U.S.C. § 12111.

53.

Plaintiff has a disability and was perceived by Defendant as having a disability that substantially limits a number of major life activities.  Specifically, Plaintiff's disabilities included two herniated discs and arthritis.

54.

Defendant was aware of these conditions as they resulted from an on-the-job injury, and therefore, Plaintiff was perceived by Defendant as having a disability.

55.

Plaintiff was qualified to perform the essential functions of her job and able to perform said functions, with or without a reasonable accommodation.

56.

As alleged herein, Plaintiff requested reasonable accommodation for her position.

57.

As alleged herein, Defendant denied Plaintiff's requested accommodation and refused to engage in the interactive process.

58.

Accordingly, Defendant failed to provide Plaintiff with a reasonable accommodation for her conditions and injuries that are considered disabilities under the Americans with Disabilities Act.

59.

As a direct result of Defendant's refusal to provide a reasonable accommodation, Plaintiff was terminated from her position.

60.

Plaintiff has been injured by Defendant's failure to provide a reasonable accommodation, and Plaintiff is entitled to all damages allowed under the Americans with Disabilities Act, including an award of back pay, reinstatement and/or front pay, compensatory and punitive damages, and attorney's fees and costs of litigation, all in an amount to be proven at trial.

**COUNT II:**
**DISCRIMINATION BASED ON DISABILITY**
**IN VIOLATION OF AMERICANS WITH DISABILITIES ACT**

61.

Plaintiff hereby pleads and incorporates by reference all of the allegations contained in Paragraphs 1 through 48, as if the same were set forth herein.

62.

The Americans with Disabilities Act prohibits covered entities from "discriminating against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).

63.

As alleged herein, Defendant and Plaintiff are a covered, non-exempt employer and employee under the Americans with Disabilities Act, respectively. *See* 42 U.S.C. § 12111.

64.

Plaintiff has a disability and was perceived by Defendant as having a disability that substantially limits a number of major life activities.  Specifically, Plaintiff's disabilities included two herniated discs and arthritis.

65.

Defendant was aware of these conditions as they resulted from an on-the-job injury, and therefore, Plaintiff was perceived by Defendant as having a disability.

66.

Plaintiff was qualified to perform the essential functions of her job and able to perform said functions, with or without a reasonable accommodation.

67.

Defendant terminated Plaintiff due to her disabilities.

68.

Defendant replaced Plaintiff with an individual without a disability.

69.

Plaintiff has been injured by Defendant's discrimination due to her disability, and Plaintiff is entitled to all damages allowed under the Americans with Disabilities Act, including an award of back pay, reinstatement and/or front pay, compensatory and punitive damages, and attorney's fees and costs of litigation, all in an amount to be proven at trial.

**COUNT III:**
**RETALIATION**
**IN VIOLATION OF AMERICANS WITH DISABILITIES ACT**

70.

Plaintiff hereby pleads and incorporates by reference all of the allegations contained in Paragraphs 1 through 48, as if the same were set forth herein.

71.

The Americans with Disabilities Act prohibits covered entities from discriminating against any individual because such individual has opposed any act or practice made unlawful by the Americans with Disabilities Act or because said individual has filed a Charge of Discrimination. 42 U.S.C. § 12203(a).

72.

As alleged herein, Plaintiff filed a Charge of Discrimination with the EEOC, alleging that Defendant had discriminated against her based on disability, including Defendant's failure to provide a reasonable accommodation.

73.

Once Defendant became aware that Plaintiff had filed a Charge of Discrimination, it took a position with the Georgia Department of Labor as to the reason for Plaintiff's termination that was not only untrue, but that Defendant knew would cause Plaintiff's unemployment claim to be denied.

74.

Alternatively, even if Defendant's report to the Georgia Department of Labor had been true, Defendant refused to reinstate Plaintiff because she filed a Charge of Discrimination.

75.

Once Defendant became aware that Plaintiff had filed a Charge of Discrimination, it changed its position with its worker's compensation carrier as to Plaintiff's ability to work that it knew would cause Plaintiff's to no longer be entitled to indemnity benefits.

76.

Alternatively, even if Defendant's report to the worker's compensation claims examiner had been true, Defendant refused to reinstate Plaintiff and offer her an accommodation because she filed a Charge of Discrimination.

77.

Plaintiff has been injured by Defendant's retaliatory conduct in response to Plaintiff's participation in protected activities, and Plaintiff is entitled to all damages allowed under the Americans with Disabilities Act, including compensatory damages, reinstatement, backpay, injunctive relief, punitive damages, and reasonable attorney's fees and costs of litigation, in an amount to be proven at trial.

## COUNT IV:
## FAILURE TO PAY OVERTIME PAY
## IN VIOLATION OF THE FAIR LABOR STANDARDS ACT

78.

Plaintiff hereby pleads and incorporates by reference all of the allegations set forth in the Statement of Facts, Paragraphs 1 through 43, as if the same were set forth herein.

79.

Under the Fair Labor Standards Act, an employer must pay a rate of not less than one and one-half times an employee's regular rate for any time worked in excess of forty hours for any given workweek.  *See* 29 U.S.C. § 201(a)(1).

80.

As alleged herein, Defendant and Plaintiff are covered, non-exempt employer and employee under the Fair Labor Standards act, respectively. *See* 29 U.S.C. § 201(a)(1).

81.

As alleged herein, Plaintiff worked in excess of 40 hours per work week on occasion while she was employed by Defendant.

82.

Defendant frequently changed Plaintiff's time records to remove such time worked in excess of 40 hours.

83.

As a result, Defendant failed to pay Plaintiff at the overtime rate for hours worked in excess of 40 hours per work week.

84.

Defendant's conduct, as alleged herein, constitutes withholding and/or failing to provide overtime pay in violation of the Fair Labor Standards Act.

85.

Plaintiff has been injured by Defendant's actions and is entitled to an award of unpaid overtime compensation and all other damages allowed under the Fair Labor Standards Act, as well as reasonable attorney's fees and costs of litigation to be paid by Defendant pursuant to 29 U.S.C. § 216(b), in an amount to be proven at trial.

86.

Because Defendant intentionally altered records to avoid paying overtime, Defendant has acted in bad faith and knew its actions were a violation of the Fair Labor Standards Act, or otherwise that it did not have reasonable grounds to be that its actions were not a violation of the Fair Labor Standards Act.

87.

This Court should exercise its sound discretion to award liquidated damages pursuant to 29 U.S.C. § 260, and should award to Plaintiff said liquidated damages in an amount equal to an award for unpaid overtime compensation.

**COUNT V:**
**FAILURE TO PAY OVERTIME PAY**
**IN VIOLATION OF THE FAIR LABOR STANDARDS ACT**

88.

Plaintiff hereby pleads and incorporates by reference all of the allegations set forth in the Statement of Facts, Paragraphs 1 through 43, as if the same were set forth herein.

89.

Pursuant to the Fair Labor Standards Act, an employer must pay an employee wages equivalent to $7.25 per hour.  29 U.S.C. § 206.

90.

As alleged herein, Defendant and Plaintiff are covered, non-exempt employer and employee under the Fair Labor Standards act, respectively.  *See* 29 U.S.C. § 201(a)(1).

91.

As alleged herein, Defendant intentionally altered Plaintiff records and failed to compensate Plaintiff for time worked.

92.

As a result, Defendant failed to compensate Plaintiff at least minimum wage.

93.

Defendant's conduct, as alleged herein, constitutes withholding and/or failing to provide minimum wage in violation of the Fair Labor Standards Act.

94.

Plaintiff has been injured by Defendant's actions and is entitled to an award of unpaid minimum wage compensation and all other damages allowed under the Fair Labor Standards Act, as well as reasonable attorney's fees and costs of litigation to be paid by Defendant pursuant to 29 U.S.C. § 216(b), in an amount to be proven at trial.

95.

Because Defendant intentionally altered records to avoid compensating Plaintiff appropriately, Defendant has acted in bad faith and knew its actions were a violation of the Fair Labor Standards Act, or otherwise that it did not have reasonable grounds to be that its actions were not a violation of the Fair Labor Standards Act.

96.

This Court should exercise its sound discretion to award liquidated damages pursuant to 29 U.S.C. § 260, and should award to Plaintiff said liquidated damages in an amount equal to an award for unpaid minimum wage compensation.

**JURY DEMAND**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Kreo Montgomery respectfully prays for the following relief:

1)      That Summons and Process be issued to Defendant Amazon.com Services LLC, and that said Defendant be served as provided by law;

2)      That this matter be tried before a jury;

3)      That judgment be awarded for and in favor of Plaintiff and against Defendant on Count I for failure to provide a reasonable accommodation, and grant Plaintiff all relief allowable under the Americans With Disabilities Act;

4)      That judgment be awarded for and in favor of Plaintiff and against Defendant on Count II for discrimination based on disability, and grant Plaintiff all relief allowable under the Americans With Disabilities Act;

5)      That judgment be awarded for and in favor of Plaintiff and against Defendant on Count III for retaliation, and grant Plaintiff all relief allowable under the Americans With Disabilities Act;

6)      That judgment be awarded for and in favor of Plaintiff and against Defendant on Count IV for failure to pay overtime, and grant Plaintiff all relief allowable under the Fair Labor Standards Act;

7)      That judgment be awarded for and in favor of Plaintiff and against Defendant on Count V for failure to pay minimum wage, and grant Plaintiff all relief allowable under the Fair Labor Standards Act;

8)      For such other relief as this Court shall deem just and proper.

Respectfully submitted, this 9th day of December, 2020.


KENNETH E. BARTON III
Georgia Bar No. 301171
JOHN M. MCCALL
Georgia Bar No. 778954
*Attorneys for Plaintiff*

COOPER, BARTON & COOPER, LLP
170 College Street
Macon, Georgia 31201
(478) 841-9007 telephone
(478) 841-9002 facsimile
keb@cooperbarton.com
jmm@cooperbarton.com